**WILLIAMS et al. v. NEW YORK, P. & N. R. CO.**

(Circuit Court of Appeals, Fourth Circuit. January 12, 1926.)

No. 2377.

**1. Commerce ⬤⟿8(12).**

Shipper may not, in suing carrier, ignore the Hepburn Act (34 Stat. 584), where its terms apply, and bring his suit at common law.

**2. Courts ⬤⟿90(2)—Supreme Court's affirmance of judgment by equally divided court does not settle principles of law, so as to make judgment an authority for determination of other issues.**

Though Supreme Court's affirmance of a judgment by an equally divided court is final and binding on parties to it, it does not settle principles of law involved, so as to make judgment an authority for determination of other issues, either in Supreme Court or in inferior courts.

**3. Removal of causes ⬤⟿89(2)—Federal court has jurisdiction of case properly removed from state court irrespective of whether petition and bond were submitted to state judge, and his action thereon (Judiciary Act Sept. 24, 1789, § 12 [1 Stat. 79]; Act March 3, 1875, § 3 [18 Stat. 471]).**

If case is removable under Judiciary Act Sept. 24, 1789, § 12, and Act March 3, 1875, § 3, and after due written notice to adverse party and proper petition and bond for removal are timely filed in clerk's office of state court, and thereupon proper transcript of record is lodged in federal court, that court has jurisdiction, irrespective of whether petition and bond were submitted to state judge and his action thereon.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Action begun in state court by W. F. D. Williams and others, partners in trade under the firm name and style of the East Coast Potato Distributors, against the New York, Philadelphia & Norfolk Railroad Company, and removed to federal court by defendant. Judgment for defendant, and plaintiffs bring error. Affirmed.

James E. Heath, of Norfolk, Va. (S. James Turlington, of Accomac, Va., on the brief), for plaintiffs in error.

George R. Allen, of Philadelphia, Pa. (Thomas H. Willcox, of Norfolk, Va., on the brief), for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. In the circuit court for Northampton county, Virginia, the plaintiffs in error sued the defendant in error to recover $50,000 as damages for the defendant's tardiness in furnishing cars to carry plaintiffs' potatoes from various Virginia stations to places outside of that state. Upon defendant's petition the case was removed to the court below and there tried, the verdict and judgment being for the defendant.

It is unnecessary now to consider such of plaintiffs' assignments of error as relate to anything which happened at the trial, for it is clear that in any event they were not entitled to recover. The applicable Interstate Commerce Commission tariff provided that "orders for cars desired for loading must be * * * given in writing, or, if given orally or by telephone, must be confirmed in writing," and none of those of the plaintiffs were either so given or confirmed. The learned judge below held that the defendant by its course of dealing with its shippers had waived the requirement. Less than six weeks later the Supreme Court decided that such a rule could not be waived. Davis v. Henderson, 45 S. Ct. 24, 266 U. S. 92, 69 L. Ed. 182. Even so, the plaintiffs insist they are entitled to a reversal, because their motion for a remand to the state court should have been granted, and was not. They argue that the case was not a removable one, and that, if it had been, one of the steps essential to removal was never taken. Of these in their order.

[1] The case was removed because it was said to arise under a law of the United States. Plaintiffs say it did not and give three reasons: First. The declaration did not show a right of action under any law, state or federal. If so, no harm has been done, for plaintiffs are now out of court, where this contention assumes they always should have

been. Second. The wording of the declaration does not absolutely negative the possibility that the potatoes might have been shipped over routes to which the Hepburn Amendment (34 Stat. 584) did not apply. As we do not agree that any such construction of the declaration is justified, no good purpose will be served by setting forth the ingenious, but, as we think, highly artificial, reasoning by which plaintiffs seek to sustain it. Third. A shipper, if he chooses, may ignore the Hepburn Act, even where it in terms applies, and bring his suit at common law. This contention is in the teeth of what was said in Chicago, R. I. & P. R. Co. v. Hardwick Elevator Co., 33 S. Ct. 174, 226 U. S. 426, 57 L. Ed. 284, 46 L. R. A. (N. S.) 203 and may not be sustained here.

Lastly, they say that, even assuming the case was a removable one, it was not properly removed, because the petition and bond were not submitted to the judge of the state court. What actually happened may be briefly stated. On the 30th of September, 1921, the attorney for the plaintiffs admitted service upon him of a written notice from the defendant that at 4:30 in the afternoon of October 4th it would submit to the circuit court for Northampton county, at the courthouse at Eastville, a petition and bond for removal of the case to the District Court of the United States for the Eastern District of Virginia, and would immediately thereafter file them in the clerk's office of the circuit court. On the day named in the notice the petition and bond were filed in such office. It was not presented to the judge of the court, as he was at the time out of the county and state, being ill at the Johns Hopkins Hospital in Baltimore. He returned to his home in Northampton county somewhere between the 7th and the 14th of the month, but neither he nor any other judge held any court therein at any time in that October. Apparently, on the 6th of the month, the clerk of his court made up a transcript of the record which was then or shortly thereafter filed in the United States court. So soon as the state court judge got back from Baltimore, one of the attorneys of the defendant went to see him at his home, and told him that he had filed the petition and bond for removal, to which the judge replied that, if they were in proper form, it was all right.

Section 12 of the Judiciary Act of September 24, 1789 (1 Stat. 79), provided that a defendant who sought a removal should file a petition for it and give surety for his entering the record in the federal court, and then said: "It shall * * * be the duty of the state court to accept the surety, and proceed no further in the cause." It added that when the record was entered in the United States court, the cause should proceed as if it had been there brought by original process. So the statutes still read, except that for the last half century; that is to say, since the enactment of the third section of the Act of March 3, 1875, 18 Stat. 471, the state court is required to "accept" the "petition" as well as the surety or bond.

So far as our researches go, the question with which we are now concerned never arose in any reported case until after the passage of the last mentioned statute. Judge Drummond in his able opinion in Osgood v. Chicago, D. & V. R. Co., 18 Fed. Cas. 876, 880, No. 10,604, was probably right in supposing that it had not, because until 1866 a defendant seeking to remove was required to file his petition and tender his surety at the time of entering his appearance in the state court, and then the court would ordinarily be in session. Judge Drummond thought that the act of 1875 expressly authorized the filing of the petition and bond out of term time and when the judge of the state court might be inaccessible. A number of his judicial brethren were quite as clear that it did not. Thus, for example, Judge Coxe held that the petition and bond were not effectually filed unless and until they were submitted to the judge of the court when sitting as such, and that a presentation to him during vacation or at chambers was not enough.

After Remington v. Central Pacific Railway Co., 25 S. Ct. 577, 198 U. S. 95, 99, 49 L. Ed. 959, that particular controversy was closed. In that case the petition and bond had been submitted to the state judge, so that all the Supreme Court was called upon to say was that the presenting of the petition to a judge in chambers and the filing of it in the state court satisfied the statute. The judges who insist that there must be some presentation other than the mere filing in the clerk's office have since quoted this language in support of their view (Mays v. Newlin [C. C.] 143 F. 574, 576), while those of the other mind call attention to the fact that in that very connection Justice Holmes cited with approval Noble v. Massachusetts Beneficial Association (C. C.) 48 F. 337, in which Judge Wallace had said: "The statute * * * does not require the removing party to present his petition or bond to a judge, either in vacation or in open court, but is

satisfied when he files them with the official custodian of the records of the court."

In 1910 and 1911 Congress was engaged in recasting and codifying in the Judicial Code many of the statutes defining and regulating the jurisdiction and procedure of the federal courts, including those regulating removals. By that time the controversy with which we are concerned had been going on for 35 years. A few words in section 29 of the draft code would have ended it. They were not inserted.

The federal courts of first instance are hopelessly divided on the question, and the text-writers are not of one mind. Among the cases which hold that a removal cannot be validly affected without submitting the petition and bond to a judge of the state court, and that mere filing in the clerk's office is not enough, may be mentioned: Scott v. Otis, 21 Fed. Cas. 846, No. 12,543; Shedd v. Fuller (C. C.) 36 F. 609; Roberts v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co. (C. C.) 45 F. 433; Williams v. Massachusetts Beneficial Association (C. C.) 47 F. 533; Hall v. Chattanooga Agricultural Works (C. C.) 48 F. 599; Kinne v. Lant (C. C.) 68 F. 436, 438; La Page v. Day (C. C.) 74 F. 977; Fox v. Southern Ry. Co. (C. C.) 80 F. 945, 948; Mays v. Newlin (C. C.) 143 F. 574; Lee v. Continental Insurance Co. (D. C.) 292 F. 409. Mr. Moon, in his book on the Removal of Causes, § 177, p. 494, has expressed himself as of the same opinion.

The contrary view has been taken in Osgood v. Chicago, D. & V. R. Co., 18 Fed. Cas. 876, 880, No. 10,604; Brown v. Murray, Nelson & Co. (C. C.) 43 F. 614; State v. Coosaw Mining Co. (C. C.) 45 F. 804, 811; Noble v. Massachusetts Beneficial Association, supra; Wills v. Baltimore & O. R. R. Co. (C. C.) 65 F. 532; Eisenmann v. Delemar's Nevada Gold Mining Co. (C. C.) 87 F. 248; Hansford v. Stone-Odean-Wells Co. (D. C.) 201 F. 185; Frazier v. Hines (D. C.) 260 F. 874. Ex-Senator Lewis, in his recent work on Removal of Causes, aligns himself with these latter authorities, saying "that, although it has been the practice in many federal courts for many years not to consider any motion in the cause until an application has been made in the state court for an order to remove it to the federal court, the general rule of law undoubtedly is that, if the case be a removable one, the mere filing of a bond and petition in the state court removes the case." Lewis on Removal of Causes, § 274.

Admittedly the point in dispute is a narrow one. All agree that if the case be removable, and if the petition and bond are in proper form, and have been filed in due season after due written notice has been given the other side that they will be and have been presented to the judge, it makes no difference what he does or leaves undone. From that time at the latest his power to affect the legal status of the case is at an end. He may sign a formal order of removal, or one refusing to permit the removal, or he may do nothing, and the result is the same; the case has been validly removed from his court. Madisonville Traction Co. v. Saint Bernard Mining Co., 25 S. Ct. 251, 196 U. S. 239, 49 L. Ed. 462. As a consequence it would seem that the suggestion made in a number of cases and supported by Judge Andrew M. J. Cochran with his usual industry and ability in Lee v. Continental Insurance Co., supra, that the Judicial Code now requires that written notice be given of the intention to file the petition and bond, so that the adverse party shall have an opportunity to be heard before the state judge in opposition is far from convincing.

It is true that a plaintiff who has brought what he believes to be a nonremovable action may naturally wish to avoid the trouble of going to the United States court and there asking for a remand, but he cannot escape therefrom by getting the state judge to agree that the case is one which cannot be removed. He must do more; he must convince his adversary as well, and that is usually a more difficult task, for, unless he does, the latter will take the case to the federal court, and in self-defense he must follow, even if all that he there seeks to do is to show that in a legal sense it has never left the state tribunal. C. & O. Railway Co. v. McCabe, 29 S. Ct. 430, 213 U. S. 207, 53 L. Ed. 765. We may note in passing that we have heretofore had occasion to say that the written notice now required is not intended to give the plaintiff a chance to oppose either the filing or the removal. Miller v. Southern Bell Telephone & Telegraph Co. (C. C. A.) 279 F. 806. We are still of that opinion.

Those who take the view that a personal presentation of the petition and bond to the judge of the state court is essential ask how otherwise is it possible to make sure that the state court knows whether any attempt to remove has been made, and, if it has, whether it has been successful. Its judge or its judges cannot keep themselves informed as to all the papers which may be lodged in the office of its clerk. It acquired jurisdiction over the cause when the latter was instituted in it. It

may and should proceed until it has been judicially informed that its power over the matter has been suspended. Insurance Co. v. Pechner, 95 U. S. 183, 186, 24 L. Ed. 427.

What happened in Roberts v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 51 N. W. 478, 480, 48 Minn. 521, shows that, before the statute required the defendant to give notice to the adverse party of his intention to file the removal petition and bond, it was quite possible for him to lodge these papers in the clerk's office without any one other than perhaps a subordinate employee therein being any the wiser. In that case, the plaintiff's counsel, not knowing that any attempt to remove had been made, moved the state court for a judgment by default for want of answer. The motion was sustained by a judge who was equally uninformed as to what had actually been done. In like ignorance, as it would seem, the default judgment was subsequently extended and made final. Apparently it was not until after all these things had happened that the defendant took the trouble to call the attention of the court to the fact that in its view the case had long since been removed. The state court at that late date declined to strike out its judgment. The Supreme Court of Minnesota, in an able and careful opinion, affirmed the court below, although not without the expression of grave doubt. It rested its decision mainly on the ground that the state court could not suspend its proceedings, as the federal statute commanded, unless it in fact knew that a removal had been made. The case was carried to the Supreme Court of the United States, and was there affirmed without opinion by an equally divided court. Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Roberts, 17 S. Ct. 992, 164 U. S. 703, 41 L. Ed. 1183.

In neither the Supreme Court of the state nor in that of the United States was any question raised or decided as to whether the federal Circuit Court, as it then was, could properly have retained the case, for that issue was not before either of them. To complete the story, however, it should be said that the United States District Judge for Minnesota at that time was one of those who held that presentation of the petition and bond to the state court judge was essential, and he accordingly remanded the case. Roberts v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., supra. All that was in issue in the appellate court was whether the lower state tribunal erred in proceeding with the case after the petition and bond for removal

had been filed in its clerk's office, but when the fact of such filing was actually unknown to the judge of the court and to the counsel for the plaintiff. The Judicial Code requirement for notice now insures that a removal cannot be made without the knowledge of the adverse party.

[2] A plaintiff, as has already been pointed out, may not safely ignore the attempted removal of a legally irremovable case. Chesapeake & Ohio R. R. Co. v. McCabe, supra. Conversely, it is possible that a defendant, who leaves a state court uninformed of the valid removal of a removable case, does so at some risk to himself. That is at least as far as the decision in the Minnesota case goes, and, although the Supreme Court's affirmance of that judgment was final and binding upon the parties to it, it did not settle the principles of law involved in such sense as to make it an authority for the determination of other issues, either in it or in the inferior courts. Hertz v. Woodman, 30 S. Ct. 621, 218 U. S. 205, 213, 214, 54 L. Ed. 1001.

Moreover, the status of the instant case is far different from that in which Roberts v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., supra, presented itself to the highest courts of the state and the nation. Here, to effect removal, the defendant has done its best to do all that the statutes or any of the decisions say it should. If it failed to achieve all that some of the latter say is essential, it apparently was not from any unwillingness on its part to do everything which could be demanded of it. Its written notice was far more precise than the authorities require. It was not its fault that, at the time it filed the removal papers, there was not in the county any judicial officer to whom they could be submitted. So soon as the judge returned to his bailiwick, it brought the subject-matter to his attention. His comment then made reads very much as that of a convalescent, who did not feel able to concern himself with the details of business.

We have referred to the special facts of the case before us, because they illustrate the inherent difficulties involved in sustaining the contention of the plaintiffs that the presentation or submission of the petition and bond to the state court, otherwise than by filing them in the clerk's office, is a condition precedent to the removal of the cause to the federal court. We do not, however, wish to base our decision upon anything which may be exceptional in them, and from the defendant's point of view appealing, for we desire to put our conclusion upon a broader basis.

As we have seen, such submission serves no other purpose than to make sure that the state court judge shall know what is being attempted. From any other standpoint it is admittedly a pure form—one might almost say a mere gesture. Because it is desirable that the individual who for the time being is the embodiment of the state court shall be informed that the case has been removed, or, if you prefer, is to be, it is only proper consideration to make sure that he is. From any other point of view the presentation of the papers to him, and the asking from him of any order upon them, has in it an inherent element of discourtesy, no matter how far absent from the mind of counsel any suggestion of such thought may be, or with whatever of deference in manner and in fact the application may be made. When the papers are submitted to him, the judge knows, and he knows that counsel knows, that so far as the removal of the case is concerned it makes no difference whether he signs the order or refuses to do so. In either event, the case will go to the federal court, and it will be for the latter to say whether it was or was not properly brought there. Of course, we do not ignore the possibility that in many cases an objection to the order which the state judge may make will convince the defendant's lawyer that the case is not removable; but, if so, it will be simply because of the obvious force of what was said, or of the high appreciation which counsel put upon the legal ability of the judge as a man, and not at all because in such a matter his opinion has any official weight.

From 1789 to the present day the only duty expressly imposed by the successive statutes upon the defendant seeking a removal, in so far as his petition is concerned, is to "file" it, and that is all that he has now to do with reference to his bond, although under the earlier enactments he was, at the time of filing his petition, required to "offer good and sufficient surety" for his entry in the federal court of copies of the process against him. The proper place to file papers is the clerk's office, and not with the judge, a matter all the more clear when, as we have seen, it is now clearly settled, the petition, if brought to the attention of the judge at all, may as well be submitted to him in chambers or in vacation, as when actually on the bench. It is true that the statutes have always required the state court to "accept" something. From 1789 to 1875 it was the surety offered by the removing party, since then it has been his petition and bond, and they have commanded him thereafter to proceed no further in the cause. The duty to stay his hand is a purely negative one, but it is not unreasonable to argue, as plaintiffs and the many who agree with them have contended, and still do, that the requirement that the petition and bond shall be accepted does call for affirmative action, which it is said cannot be demanded, or even expected, until it has been solicited.

The argument is strong; had it not been, it would not have been accepted by so many exceptionally able judges. All that we can say is that, with very real deference to their opinions, it does not seem to us conclusive. We are not persuaded that there is anything in any of these statutory requirements, or in any deduction that may reasonably be drawn from them, to show that Congress ever intended to make the jurisdiction of a federal court over a removed case depend upon the submission of the petition and bond to the state court judge, otherwise than by filing them in the office of its clerk, where all its papers are properly lodged. If any such serious consequences as those for which the plaintiffs here contend are to follow upon the failure of the defendant to get a judge to look at the petition and bond, the statutory requirement that he must do so should be far clearer than it ever has been. If a filing of a proper petition and bond in the clerk's office after the required written notice to the other side brings, as we think it does, at once into force the injunction that the state court shall proceed no further in the cause, many difficult questions, otherwise possible, cannot arise. Some of them, in Mays v. Newlin, led to results which Judge McDowell characterized as "incongruous and anomalous." The renewal statutes have always intended that the defendant in a removable case, upon the filing in due time and form of his petition and bond, may stop all further proceedings in the state court. Thereafter everything to be done or decided is to be done or decided by the federal tribunal. All disputed questions of law or of fact are to be passed upon by it.

It is, of course, true that the state judge may feel sure that the petition for removal does not show the case to be removable, or that in some other respect something essential to removal has been omitted, and, if he does, he may take the chance of going ahead, and, if the highest federal court to which the case may be carried agrees with him, what he did will stand; but after all, in the last analysis, it is with the federal courts, and not with him, or with the appellate tribunals

of his state, that the decision rests. The view for which the plaintiffs contend is that, until the papers are submitted personally to the judge of the court, the case is still open in that court, and nothing may be done in it which could have been done, had the removal petition and bond not been filed. Even so it might, of course, be possible to hold that the submission to the judge, whenever made, would relate back to the time at which the petition and bond were filed, and would vacate all that had been done since; but such was by no means the view universally taken by the judges who held that submission was essential to removal, as will appear from an examination of the opinions to which reference has heretofore been made.

[3] It is time to bring this too long opinion to a close, and we do so by holding that, if the case be removable, and after due written notice to the adverse party and proper petition and bond for removal are in due time filed in the clerk's office of the state court, and thereupon a proper transcript of the record is lodged in the federal court, that court has jurisdiction, whether the petition and bond were or were not submitted to the state judge, and irrespective of what action he may or may not have taken upon them. We believe that this conclusion is the only one which gives effect to repeated expressions of the Supreme Court. We cite but two of them as illustrative of many.

In Madisonville Traction Co. v. St. Bernard Mining Co., 25 S. Ct. 251, 196 U. S. 239, 49 L. Ed. 462, the court said, if the case be a removable one, "it is to be regarded as having been removed upon the filing of the petition and accompanying bond for removal." In the still later case of Iowa Central Railway Co. v. Bacon, 35 S. Ct. 358, 236 U. S. 310, 59 L. Ed. 591, it declared "that, if the suit be one in which the circuit court could rightfully take jurisdiction, then, upon the filing of the petition for removal in due time, with sufficient bond, the case is in law removed."

It follows that the instant case was properly removed to the court below. Nevertheless we do not mean to suggest that it will not be well to bring the petition and order to the attention of the judge of the state court whenever it is reasonably practicable to do so. That has been the established practice. In the overwhelming majority of cases it has worked well. All that we hold is that the doing so is not essential to removal.

Affirmed.